SUPERMARKETS GENERAL CORPORATION T/A
HOCHSCHILD KOHN DEPARTMENT STORE ET AL. v.
STATE OF MARYLAND

[No. 63, September Term, 1979.]

* * *

TOYS "R" US, INC., STORE 511 v. STATE OF
MARYLAND

[No. 72, September Term, 1979.]

*Decided December 24, 1979.*

612

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*J. Michael McWilliams,* with whom were *J. Hardin Marion, Ruth Newman Fahrmeier* and *Tydings & Rosenberg* on the brief, for appellant Toys "R" Us, Inc., Store 511. *Lawrence S. Greenwald,* with whom were *Harold H. Burns, Jr.,* and *Gordon, Feinblatt, Rothman, Hoffberger & Hollander* on the brief, for appellant Supermarkets General Corp. t/a Hochschild Kohn Dept. Store. *James P. Gillece* for appellant Scott's Corporation and *Neil J. Dilloff* for appellant Stewart & Company, with whom were *Piper & Marbury* on the brief.

*Amicus curiae* brief filed by May Department Stores Company t/a Hecht Company and Woodward & Lothrop, Inc., *Franklin Goldstein* and *Melnicove, Kaufman & Weiner, P.A.* on the brief.

*William H. Kenety, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

We hold that § 534 L and § 534 N of Article 27, Code (1957, 1976 Repl. Vol.) are constitutionally valid. The sections are two of the criminal statutes collected under the subtitle "Sabbath Breaking," composed of §§ 492-534V, which are commonly known as Sunday Blue Laws or Sunday Closing Laws.

Section 534 L concerns Sunday activities in Baltimore County. Subject to exceptions specifically designated, subsection (a) prescribes that "it is unlawful on Sunday for any wholesale or retail establishment to conduct business for labor or profit in the usual manner and location or to operate its establishment in any manner for the general public. It

shall not cause, direct, or authorize any employee or agent to engage in or conduct business on its behalf on Sunday." Subsection (b) excepts (1) drug stores whose principal business is the sale of drugs and related items, (2) delicatessens, (3) bakeries, (4) gasoline stations, and (5) restaurants. Subsection (c) provides that nothing in the section shall apply to (1) farmers, (2) nurserymen, and (3) "Any business with not more than six (6) persons on any shift on Sunday." Subsection (d) makes the section inapplicable "to any person who by reason of his religious conviction observes a day other than Sunday as his day of rest and actually refrains from labor or secular business on that day." The term "a day other than Sunday" is defined as "any consecutive twenty-four hour period." Any establishment which offers service as its primary business, subsection (e), and industries "where continuous processing or manufacturing is required by the very nature of the process involved," subsection (f), are allowed to operate on Sunday, and subsection (g) permits all recreational activities, sports, and amusements on Sunday. Subsection (h) expressly disclaims that the section amends any other provision of law with reference to prohibition of Sunday activities and specifically declares that the section shall not be construed so as to permit new or used car dealer to dispose of any motor vehicle. Subsection (i) authorizes the State's Attorney of Baltimore County to petition the Circuit Court for Baltimore County to enjoin any violation. Subsection (j) makes any violation a misdemeanor and establishes fines as punishment upon conviction, except that no employee or agent who has been caused or directed by his employer to violate the provisions of the section may be fined.

Section 534 N concerns Sunday activities in Anne Arundel and Calvert counties. It tracks § 534 L with these differences: dealers in boats and boating equipment, and fishing equipment and supplies are added to the exempted businesses, subsection (b) 6; nothing in the section applies to any business with not more than eight persons on any one shift on a Sunday, subsection (c) 3; and the fines authorized upon conviction are different, subsection (j).

# I

We are called upon to determine the constitutional validity of the two statutes by reason of the convictions of four retail sales establishments for committing misdemeanors proscribed by them.[1] Scott's Corporation and Stewart and Company were charged with violating § 534 L by operating a business on Sunday in Baltimore County with more than six persons on a shift. Supermarkets General Corporation, trading as Hochschild Kohn Department Store, and Toys "R" Us, Inc., Store 511, were charged with violating § 534 N by operating a business in Anne Arundel County with more than eight persons on a shift. At separate trials in the District Court of Maryland, Scott's and Stewart were found guilty and fined. Each noted an appeal to the Circuit Court for Baltimore County. The cases were consolidated and tried *de novo*. The defendants were again convicted and fined. We granted their petitions for certiorari. At separate trials in the Circuit Court for Anne Arundel County, Hochschild Kohn and Toys were found guilty and fined. Each noted an appeal to the Court of Special Appeals. We granted certiorari before decision by that court and consolidated all four cases. At each trial the contention that the statutes were unconstitutional was duly raised and rejected by the court.

With respect to the constitutional issues, each of the appellants challenges the statute under which it was convicted on the grounds that it violates equal protection of the law and due process of law under the Fourteenth Amendment to the Constitution of the United States and under Article 24 of the Declaration of Rights, Constitution of Maryland. Toys also contends that the Sunday Blue Laws are laws respecting an establishment of religion prohibited by the First Amendment to the federal constitution and Article 36 of the Maryland Declaration of Rights. Scott's and Stewart

1. For the nature and extent of the power of the Maryland judiciary with respect to review of constitutional issues *see,* Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 124, 98 S. Ct. 2207 (1978), citing Ferguson v. Skrupa, 372 U.S. 726, 731, 83 S. Ct. 1028 (1963); City of Baltimore v. State, 281 Md. 217, 230, 378 A.2d 1326 (1977); Perkins v. Eskridge, 278 Md. 619, 624, 366 A.2d 21 (1976); Consolidated Eng. Co. v. Cooper, 246 Md. 610, 615, 228 A.2d 823 (1967); McGowan v. State, 220 Md. 117, 124, 151 A.2d 156 (1959), *aff'd,* 366 U.S. 420 (1961).

further claim that § 534 L creates a monopoly in contravention of Article 41 of the Maryland Declaration of Rights.

## II

It is patent that the enactment of Sunday Closing Laws is an exercise of the State's police power.

> Throughout this century and longer, both the federal and state governments have oriented their activities very largely toward improvement of the health, safety, recreation and general well-being of our citizens. Numerous laws affecting public health, safety factors in industry, laws affecting hours and conditions of labor of women and children, week-end diversion at parks and beaches, and cultural activities of various kinds, now point the way toward the good life for all. Sunday Closing Laws, like those [of Maryland] have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. [*McGowan v. State of Maryland,* 366 U.S. 420, 444-445, 81 S. Ct. 1101 (1961).] [2]

The basic rule is that there is a presumption of the constitutional validity of statutes. We put it thus in *Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 384 A.2d 748 (1978):

> A statute enacted under the police power carries with it a strong presumption of constitutionality and the party attacking it has the burden of affirmatively and clearly establishing its invalidity; a reasonable doubt as to its constitutionality is sufficient to sustain it. . . . In other words, the legislature is presumed to have acted within

---

**2.** Mr. Chief Justice Warren delivered the majority opinion. Mr. Justice Frankfurter, whom Mr. Justice Harlan joined, filed a separate opinion. McGowan v. State of Maryland, 366 U.S. 459, 81 S. Ct. 1153 (1961). Mr. Justice Douglas wrote a dissenting opinion. 366 U.S. at 561.

Hereinafter, unless otherwise indicated, reference to *McGowan* is to the majority decision of the Supreme Court of the United States.

constitutional limits so that if any state of facts reasonably can be conceived that would sustain the constitutionality of the statute, the existence of that state of facts as a basis for the passage of the law must be assumed. [*Id.* at 427.]

*Accord: Condominium Owners v. Supervisor,* 283 Md. 29, 388 A.2d 116 (1978); *Davidson v. Miller,* 276 Md. 54, 69-70, 344 A.2d 422 (1975), *quoting Salsburg v. Maryland,* 346 U.S. 545, 553 n. 9, 74 S. Ct. 280 (1954).

At the hub of appellants' equal protection and due process contentions is that the exceptions of the various commodities, businesses and persons from the Sunday prohibitions are without rational and substantial relation to the object of the legislation and, therefore, are arbitrary, oppressive and unreasonable. The standards under which this proposition is to be evaluated with respect to equal protection have been often set forth, although no precise formula has been developed. It is that

the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [*McGowan,* 366 U.S. at 425-426.]

This statement is in practical effect an iteration of the rational basis test used in equal protection analysis and the Supreme Court's application of it to Sunday closing laws serves as clear indication that such laws do not involve a fundamental right nor do they operate to the peculiar disadvantage of a suspect class. *See Wheeler v. State,* 281 Md. 593, 600-603, 380 A.2d

1052 (1977), *cert. denied, Maryland v. Wheeler,* 435 U.S. 997 (1978).

The test for constitutionality under the due process clause is

> whether a statute, as an exercise of the state's police power, bears a real and substantial relation to the public health, morals, safety, and welfare of the citizens of this state. The exercise by the Legislature of the police power will not be interfered with unless it is shown to be exercised arbitrarily, oppressively or unreasonably. [*Bowie Inn v. City of Bowie,* 274 Md. 230, 236, 335 A.2d 679 (1975).]

Thus, the companion contentions of equal protection and due process mesh. There is no practical distinction between the grounds on which the two contentions are argued, and determination of one will resolve the other.

The objective of the Maryland Sunday Closing Laws has been determined. In the *McGowan* decision of this Court, we said that

> the basic purpose of such statutes, with their exceptions, is the civil establishment and regulation of a day of rest from work. . . . The legislative plan is plain. It is to compel a day of rest from work, permitting only activities which are necessary or recreational. [220 Md. at 122-123.]

The Supreme Court of the United States accepted this Court's determination that the statutes' purpose and effect was "to set aside a day of rest and recreation." *McGowan,* 366 U.S. at 449.

In light of the objective of the legislation, we evaluate the constitutionality of the two practically identical statutes under the principles above set out. It would seem that the General Assembly could reasonably find that the exemption of the operation on Sunday of the specified establishments and businesses and the exceptions as to the designated classes of persons were necessary in the counties concerned, either for the health of the populace or for the enhancement

of the recreational atmosphere of the day. The excepted retail establishments are all directly related to health or recreation. The rational basis for excepting industries where continuous processing or manufacturing is necessary by the very nature of the process involved, and for excepting farms and nurserymen whose chores must be performed seven days a week, needs no explication. The limitation of the number of persons on a shift assures that a number of employees of large establishments will be afforded the day of rest sought by the laws. We see no invidious discrimination in § 534 L and § 534 N.

Our view is supported by both our *McGowan* decision and its affirmation by the Supreme Court. In that case § 521, as then in effect, generally prohibiting retail sales on Sunday, excepted, as to Anne Arundel County, the sale of certain commodities, and the operation of specified businesses, including those with only one employee exclusive of the owner. The law was attacked on equal protection and due process grounds. We recognized that "[t]here can be, and often are, sharp differences of opinion as to what is necessary and what is proper or preferred recreation, but the answers must be given by the legislature, and if they are not clearly arbitrary or oppressively discriminatory, the legislative choices must be sustained." 220 Md. at 123. The Supreme Court agreed. It had no difficulty in finding a rational basis for the classifications. 366 U.S. at 425-428.

Cases of this Court since *McGowan* support our position. In *Richards Furniture v. Board,* 233 Md. 249, 196 A.2d 621 (1964) the attack on § 521 was renewed on equal protection and due process grounds because of an amendment which provided that "every market or department store in which stalls or departments are rented or concessions given to individual merchants or vendors shall be considered as one establishment." We noted that *McGowan* found the basic portion of the act to be constitutional and believed that, with the amendment, it still conformed to the Maryland scheme. "The operation of large commercial markets or department stores on Sunday would materially interfere with the recreational atmosphere of the day, while small retail

operations will not. And we think the classifications prescribed by the Act are reasonable and proper and are not of an invidious nature, ... being designed to prohibit on Sundays large commercial operations...." *Id.* at 263-264.

In *Rebe v. State's Attorney,* 262 Md. 350, 277 A.2d 616 (1971) we considered the constitutional validity of § 534 H, as then in effect, which pertained to Prince George's County. It was in substance the same as present §§ 534 L and 534 N and included as subsection (c) 3 the exemption of a "[s]mall business with not more than six (6) persons on any one shift with the exception of persons or retailers engaged in the sale of automobiles." We relied on the constitutional principles enunciated in *McGowan* and *Richards* in concluding that the classification of § 534 H (c) 3 was reasonable and proper, not of an invidious nature, and well calculated to achieve the legislative purpose of providing a day of rest for working persons and an atmosphere of tranquility in which to enjoy it. *Id.* at 358. We cited *Rebe* with approval in *Giant of Md. v. State's Attorney,* 267 Md. 501, 517, 298 A.2d 427, *appeal dismissed,* 412 U.S. 915 (1973).

*Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 320 A.2d 266 (1974) dealt with § 534 J, as then in effect, relating to Sunday activities in Montgomery County, and which was similar to the sections now before us and to former § 534 H, the subject of *Rebe.* We disposed of the constitutional issue summarily with the assertion that "[p]rovisions comparable to that contained in Section 534 J have consistently survived attack on constitutional grounds." *Id.* at 20.

Appellants do not profess to quarrel with *McGowan's* holdings. In oral argument before us they stated that it was important to emphasize what these appeals were not; they declared that the appeals were "not an attempt to reargue or overturn *McGowan*." It seems that the appellants are content to consider *McGowan* as sound law with respect to the Blue Laws as they then existed. They urge, however, that *McGowan* was not dispositive of their equal protection, due process and establishment of religion issues at the time they were convicted because amendments subsequent to that decision had materially changed the Blue Laws with respect

to many of the counties. They contend that they were denied equal protection and due process because the conduct for which they were found to be criminally liable in Baltimore County and Anne Arundel County is permitted as lawful in Montgomery, Prince George's, Worcester and Dorchester counties. They point to the great and ever increasing number of exceptions in the Blue Laws and suggest that the classifications now rest on grounds wholly irrelevant to the achievement of the State's objectives, rendering the statutes arbitrary and capricious as having no rational basis. This notion is without merit. A comparable contention was presented in *McGowan,* namely that a statutory arrangement which permitted only certain Anne Arundel County retailers to sell specified merchandise was contrary to equal protection because it discriminated unreasonably against retailers in other Maryland counties. 366 U.S. at 427. The Court, fully cognizant of the "myriad of exceptions for various counties, districts of counties, cities and towns throughout the State," *id.* at 424, commented in answer to the contention:

> But we have held that the Equal Protection Clause relates to equality between persons as such, rather than between areas and that territorial uniformity is not a constitutional prerequisite. With particular reference to the State of Maryland, we have noted that the prescription of different substantive offenses in different counties is generally a matter for legislative discretion. [*Id.* at 427.]

It found "no invidious discrimination here." *Id.* This view is buttressed by the realization that there is no doubt that Maryland could validly grant home rule to each of its 23 counties and to the City of Baltimore to determine the extent of Sunday closings by local option.[3] *See Salsburg v. State of*

3. As to constitutional amendments with respect to home rule and implementing legislation *see:* Md. Const., Art. XI-A (charter counties and Baltimore City), Art. XI-E (municipal corporations), Art. XI-F (code counties); Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.) Art. 25A (chartered counties), Art. 23A (municipal corporations), Art. 25B (code counties).

As the Maryland Constitution now stands no municipal corporation, by any amendment or addition to its charter, may "permit any act which is prohibited by the laws of this State concerning the observance of the Sabbath Day or the manufacture, licensing or sale of alcoholic beverages." Md. Const., Art. XI-E, § 6.

*Maryland,* 346 U.S. 545, 552, 74 S. Ct. 280 (1954). It is true that with one exception, Maryland had not, in fact, granted home rule powers in regard to Sunday closings. We have found that the General Assembly did not include the enactment of Sunday Blue Laws in the Express Powers Act (Code, 1957, 1973 Repl. Vol., 1979 Cum. Supp.) Art. 25A, § 5, enacted pursuant to the Home Rule Amendment, Art. XI-A, Md. Const. The power has been granted specifically to only one home rule subdivision, the City of Baltimore, by Acts 1931, ch. 287. *Steimel v. Board,* 278 Md. 1, 10-11, 357 A.2d 386 (1976). Therefore, the matter of Sunday closings remains in the General Assembly. But, of course, it "may itself determine such an issue for each of its local subdivisions, having in mind the needs and desires of each." Salsburg, 346 U.S. at 552. "It has long been the practice of the Maryland Legislature either to enact local laws or to exempt particular counties from the operation of general laws." *Neuenschwander v. Wash. San. Com.,* 187 Md. 67, 80, 48 A.2d 593 (1946); *Stevens v. State,* 89 Md. 669, 674, 43 A. 929 (1899).

> Maryland has followed a policy of thus legislating, through its General Assembly, upon many matters of local concern, including the prescription of different substantive offenses in different counties. The cumbersomeness of such centrally enacted legislation as compared with the variations which may result from home rule is a matter for legislative discretion, not judicial supervision, except where there is a clear conflict with constitutional limitations. [*Salsburg,* 346 U.S. at 552-553.]

There is no such clear conflict here any more than there is in the differing requirements as to sales of alcoholic beverages in various counties and cities. Code (1957, 1976 Repl. Vol.) Art. 2B.

> The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of

this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State. [*Missouri v. Lewis,* 101 U.S. 22, 31 (1879).]

Since *Lewis* the Supreme Court has given continued recognition to the principle that uniformity throughout the limits of a state is not in and of itself a prerequisite to meeting the requirements of the fourteenth amendment's equal protection clause. *Washabaugh v. Washabaugh,* 285 Md. 393, 407, 404 A.2d 1027 (1979) and cases therein cited; *Davidson v. Miller,* 276 Md. 54, 71-77, 344 A.2d 422 (1975). Equal protection "means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." *Salsburg,* 346 U.S. at 551, quoting *Lewis* at 31. *See Matter of Trader,* 272 Md. 364, 383-386, 325 A.2d 398 (1974).

To summarize, we agree that territorial classifications, as decisions of this Court indicate,[4] must have a rational basis. But, "a rational basis, and thus constitutionality for equal protection purposes, will be presumed unless 'a clear and convincing showing by the party assailing the legislative classification [proves] that it does not rest upon any reasonable basis, but is essentially arbitrary.'" *Davidson,* 276 Md. at 79, quoting *Trader,* 272 Md. at 400. *See Washabaugh,* 285 Md. at 408. *McGowan* established that territorial classifications in the Maryland Closing Laws had a rational basis. Examining the whole body of those laws, *McGowan,* 366 U.S. at 423, we conclude that the amendments since *McGowan*

---

4. *See* Washabaugh v. Washabaugh, 285 Md. 393, 404-408, 404 A.2d 1027 (1979); Davidson v. Miller, 276 Md. 54, 70-77, 344 A.2d 422 (1975); Matter of Trader, 272 Md. 364, 389-399, 325 A.2d 398 (1974); Bruce v. Dir. Chesapeake Bay Aff., 261 Md. 585, 605-606, 276 A.2d 200 (1971); Md. Coal Etc. Co. v. Bureau of Mines, 193 Md. 627, 642-643, 69 A.2d 471 (1949); Dasch v. Jackson, 170 Md. 251, 269-270, 183 A. 534 (1936).

do not destroy their rational basis so as to render them essentially arbitrary. The evidence here adduced, such as demographic studies, the Maryland Statistical Abstract of 1977 and affidavits of various persons, for example, from residents of Baltimore County, that they shopped on Sunday in counties where stores were open and that they would have shopped in Baltimore County stores on Sunday had they been open, does not persuade us that the statutes now lack a rational basis. The short of it is that as we read *McGowan* the purpose of providing a day on which there shall be a lesser degree of business activity is a valid reason for Sunday closing laws, and the fact that persons in different areas of the State have different desires and needs with respect to the extent of business activity in their areas does not create unreasonable classifications. Consequently, the desire of the populace of a few counties to have no reduction in commercial activity on Sunday whatsoever, does not, under the principles of *McGowan,* require any different result.

We hold that § 534 L and § 534 N do not deny equal protection or due process of law.

## III

We reject the contention advanced solely by Toys and argued briefly by it, that Maryland's Blue Laws constitute an establishment of religion in violation of the First Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, and Art. 36 of the Maryland Declaration of Rights. On this issue we find that *McGowan* is dispositive. It discussed the religion issue exhaustively, 366 U.S. 429-453, and expressly held that "the Maryland statutes are not laws respecting an establishment of religion." *Id.* at 452. It carefully explained that it did "not hold that Sunday legislation may not be a violation of the 'Establishment' Clause if it can be demonstrated that its purpose — evidenced either on the face of the legislation, in conjunction with its legislative history, or in its operative effect — is to use the State's coercive power to aid religion." *Id.* at 453. But the Court found none of these purposes was

demonstrated with respect to the statutes as in effect when considered in *McGowan*. We said in our *McGowan* that the

> argument that the Sunday Blue Laws are unconstitutional as violating the right of religious freedom has been answered many times by this and other courts, which have held that the basic purpose of such statutes, with their exceptions, is the civil establishment and regulation of a day of rest from work, not a law respecting the establishment of religion or prohibiting the free exercise thereof, and that the statutes do not offend the First and Fourteenth Amendments to the Constitution of the United States. . . . We have been shown no reason why we should depart from these holdings. [220 Md. at 122-123 (citations omitted).]

The Supreme Court accepted our determination that the statute's then purpose and effect was not to aid religion. 366 U.S. at 449. We have been shown no reason why we should depart from those holdings now. The amendments to date on their face, or their legislative history, or their operative effect do not demonstrate that the purpose of the Blue Laws, even if changed since 1959, was changed in a way that would use the State's coercive power to aid religion.

Toys makes no distinction in its argument between the establishment of religion clause of the First Amendment to the Constitution of the United States and the declarations of Article 36 of the Maryland Declaration of Rights. Therefore, we need not consider whether the two constitutional provisions are in *pari materia*. In light of Toys' argument, we have assumed *arguendo* that the requirements of the two provisions are identical.

We hold that the Sunday Closing Laws in Maryland do not "constitute the establishment of religion in violation of the First Amendment to the United States Constitution and Article 36 of the Maryland Declaration of Rights."

## IV

Article 41 of the Declaration of Rights, Constitution of Maryland, declares "That monopolies are odious, contrary to the spirit of a free government and the principles of commerce, and ought not to be suffered." There seems to be some question as to whether the constitutional ban "extends to anything other than monopolies in the strict sense, that is, an exclusive right or privilege granted by the sovereign," *Grempler v. Multiple List. Bureau,* 258 Md. 419, 424, 266 A.2d 1 (1970), but even if it did, it would not extend to the Sunday Closing Laws as Scott's and Stewart would have it.

> A monopoly within the prohibition of our Declaration of Rights, is a privilege or power to command and control traffic in some commodity, or the operation of a trade or business to the exclusion of others, who otherwise would be at liberty to engage therein, necessarily implying the suppression of competition, and ordinarily causing a restraint of that freedom to engage in trade or commerce which the citizen enjoys by common right. A monopoly is more than a mere privilege to carry on a trade or business or to deal in a specified commodity. It is an exclusive privilege which prevents others from engaging therein. A grant of privileges, even though monopolistic in character, does not constitute a monopoly in the constitutional sense when reasonably required for protection of some public interest, or when given in return for some public service, or when given in reference to some matter not of common right. [*Levin v. Sinai Hosp. of Balto.,* 186 Md. 174, 182-183, 46 A.2d 298 (1946).]

Scott's and Stewart may operate on Sunday in Baltimore County with not more than six persons on any one shift equally with others in their class. They may operate in any other county, as far as the closing laws are concerned, to the same extent as all others in their class may operate in the particular county. The desirability of doing so, economically, practically, or otherwise, is a matter of business judgment to

be exercised by them, not a matter of law for the courts. *Grempler,* 258 Md. at 430. Section 534 L does not favor "small establishments" over "large ones". It does not exclude Scott's and Stewart or others like them from the Sunday market; it simply provides, uniformly, conditions under which they may operate. Section 534 L and other sections of the Sunday Closing Laws are not and do not result in a grant to one to the exclusion of others, necessarily implying the suppression of competition.

We hold that a monopoly within the contemplation of Art. 41 of the Declaration of Rights is not suffered by § 534 L under which Scott's and Stewart were convicted.

## V

Subsection (a) of § 534 L of the Blue Laws generally forbids any wholesale or retail establishment to conduct business on Sunday. Subsection (c) 3 reads: "Nothing in this section applies to . . . [a]ny business with not more than six (6) persons on any one shift on Sunday." Subsection (d) prescribes: "Nothing in this section is applicable to any person who by reason of his religious conviction observes a day other than Sunday as his day of rest and actually refrains from labor or secular business on that day." Scott's and Stewart construe these provisions as requiring that a conviction of a wholesale or retail establishment for unlawfully conducting business on Sunday with more than six persons on any one shift include proof by the State that more than six of the persons were not excepted by subsection (d). In other words, they believe that subsection (d) defines "persons" as used in subsection (c) 3.[5] We do not read the statute that way.

---

5. If Scott's and Stewart were correct, an establishment otherwise under the restrictions of § 534 L could lawfully operate on Sunday with a shift consisting of not more than six persons who, by reason of their religious convictions, observe Sunday as a day of rest plus any number of persons who, by reason of their religious convictions, observe a day other than Sunday as a day of rest and actually refrain from labor or secular business on that day.

The exclusion in subsection (d) would not permit establishments such as appellants to close on a different day and open on Sunday with more than six employees.

Section 534 L looks only to "any wholesale or retail establishment" in its proscriptions. Subsection (a). The section does not prohibit conduct by a person except as that person may constitute a business; it does not reach a person as an employee or agent of a business. The sanctions for violation of its provisions are directed to businesses, and insofar as they relate to a person, it is only to a person as a wholesale or retail establishment.[6] Subsection (a) forbids any wholesale or retail establishment to "cause, direct, or authorize any employee or agent to engage in or conduct business on its behalf on Sunday." There is no provision against an employee or agent conducting business. Therefore, it is manifest that the exemption in subsection (d) of "any person" who meets the conditions therein set out from the applicability of the section contemplates only persons as wholesale or retail establishments and not as employees or agents of such establishments. It in no way relates to subsection (c) 3 as defining or qualifying the word "persons" as used therein. Subsection (d) provides no more than another business exemption to the prohibitions of § 534 L. It is not an element of the crime arising from an establishment operating on Sunday with more than six employees on any one shift. We hold that the State was not required, as a matter of law, to prove that more than six of the employees of Scott's and Stewart, working on their respective shifts on Sunday were not within the terms of subsection (d).[7]

---

6. Subsection (j), which establishes fines as the punishment for violations, expressly declares that "[n]othing contained herein shall be construed to permit any fine upon any employee or agent who has been caused or directed by his employer to violate the provisions of this section." But it appears that even an employee or agent freely agreeing to work on Sunday would not be culpable. The section simply does not proscribe any conduct by such person.

7. Scott's and Stewart argue that what the State would be required to prove under their interpretation of the statute is "that the defendant operated with more than six persons *who observe Sunday as their day of rest.*" What would in fact be required if their contention were valid is proof of operation with more than six persons who do not by reason of their religious conviction observe a day other than Sunday as a day of rest and actually refrain from work or secular business on that day. They err in the assumption that all persons either observe Sunday as a day of rest or, by reason of religious convictions, observe some other day and actually refrain from work or secular business on that day. There are, however, persons with no religious conviction, and persons who, despite a religious conviction calling for a day of rest, do not observe it.

## VI

The Maryland Sunday Blue Laws have been soundly denounced by some persons. They have been characterized as unwise, complex, a patchwork, a crazy quilt, a labyrinth, a legal maze, unnecessarily befuddling statutory crabgrass, an inconvenience, a hypocrisy. But even if they were, they could not for those reasons be voided by the judiciary. As we have indicated, absent some constitutional infirmity the judiciary simply has no power to interfere. We have determined that § 534 L and § 534 N, contrary to appellants' contentions, are constitutionally valid. The statutes must stand firm until the General Assembly of Maryland changes them. If it concludes that the public welfare requires that Sunday business activities no longer be proscribed in Baltimore County and Anne Arundel County, or in fact in any other county, or city or town, it has the power and the means to effectuate its conclusion.

*Judgments affirmed; costs to be paid by appellants.*