501 A.2d 43

**STATE of Maryland**

v.

**Richard W. WYAND, Sr., Roy Miller Snyder, Jr. and Albert L. Bryan.**

**No. 48, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 13, 1985.

C.J. Messerschmidt and Dennis M. Sweeney, Asst. Attys. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellant.

Kenneth J. Mackley (Mackley, Gilbert & Marks, on the brief), Hagerstown, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

We shall here hold that Maryland Code (1957, 1982 Repl. Vol., 1984 Cum.Supp.) Art. 27, § 255(a), (b), providing exemptions from the gaming laws in certain of the counties of the State, including Washington County, for certain organizations is constitutional. Accordingly, we shall reverse the decision of the Circuit Court for Washington County which held to the contrary and dismissed the charges against appellees Richard W. Wyand, Sr., Roy Miller Snyder, Jr., and Albert L. Bryan.

Snyder was convicted in the District Court in Washington County of violation of Code (1957) Art. 27, § 237 pertaining to keeping a gaming table; Code (1957) Art. 27, § 356 relative to selling lottery tickets; Code (1957) Art. 27, § 360 pertaining to keeping a place for selling, etc., of lottery tickets, and Code (1957, 1982 Repl.Vol.) Art. 27, § 362 as to possession of lottery tickets. His employees, Messrs. Bryan and Wyand, were each convicted of violations of § 356, selling lottery tickets, and § 362, possession of lottery tickets. They all appealed to the Circuit Court for Washington County.

In the circuit court the defendants filed a motion to dismiss. They asserted that "[t]he essence of the four charges" was that at Snyder's place of business they were operating "a lottery in the form of 'tip jars' and a 'poker' machine, and that those patrons who won would receive a monetary prize." They referred to the provisions of Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.) Art. 27, § 255 and said that "this statute would exempt the activities for which [they were being] prosecuted from being proscribed gambling, if they had been carried on by one of the types of organizations enumerated therein."[1] The motion "con-

---

1. Code (1957, 1982 Repl.Vol., 1985 Cum.Supp.) Art. 27, § 255 as to that which is here in dispute is identical with the 1984 cumulative supplement. Section 255(a) lists the counties to which the section is applicable. Washington County is one of those counties. Section 255(b) provides in relevant part:

cede[d] that the State, as a matter of constitutional law, does have the right to regulate gambling and also that it would be proper from said standpoint to exempt gambling in the enumerated organizations if (i) all the net proceeds were returned to the players, or (ii) all net proceeds were devoted to religious, charitable, civic, or benevolent purposes without any of the net profits going to the benefit of the members of the clubs themselves." The motion went on to aver "that in fact the clubs in Washington County that operate gambling operations, including the same type as is involved in this case, utilize the net profits therefrom for the general benefit of the members themselves in that the net proceeds are normally deposited among the general revenues of the club." Accordingly, it was contended that the result of the section in question was to deny these appellees equal protection of the law under U.S. Const. amend. XIV and Md. Declaration of Rights art. 24.

The matter came on for hearing in the circuit court. Records of a number of organizations in Washington County coming within the purview of § 255(b) were subpoenaed

---

"(1) This subtitle may not be construed to make it unlawful for any volunteer fire company or bona fide fraternal, civic, war veterans', religious or charitable organization or corporation to conduct or hold a carnival, bazaar, or raffle for the exclusive benefit of any such volunteer fire company or fraternal, civic, war veterans', religious or charitable organization or corporation, if no individual or group of individuals benefits financially from the holding of any bazaar, carnival, or raffle or receives or is paid any of the proceeds from any carnival, bazaar, or raffle, for personal use or benefit.

"(2) The organization or corporation may award prizes in cash or in merchandise by such devices as are commonly designated as paddle wheels, wheels of fortune, chance books, bingo, or any other gaming device."

The trial judge in his opinion referred to § 255(a). The statute here under discussion appeared as § 255(a) in the 1982 replacement volume of the Code. It has since been amended. We applied the statute in *American Legion v. State*, 294 Md. 1, 447 A.2d 842 (1982).

Section 255 had its genesis in Chapter 679 of the Acts of 1949 applicable only to Caroline County. That act was subject to referendum by the voters of Caroline County at the General Election of 1950. Other counties have been added over the years.

and produced in court along with testimony as to their operations. The trial judge said:

"There is no justifiable, legitimate reason to grant such privileges as those bestowed by Section 255(a) to such fraternal and veterans' organizations. Such legislation does, in fact, constitute class legislation in its purest sense. It is discriminatory, arbitrary and has no reasonable relationship to the subject matter of the gaming or lottery subtitles.

"It should be noted that no credible evidence was offered or produced by the State of any substantial reason in support of the classification attempted by Section 255(a).

"This Court believes that the Defendants here have met their heavy burden of proof. The conduct engaged in by the Defendants is a crime and that conduct is not a crime when engaged in by fraternal and/or veterans' organizations. The statutory discrimination established by Section 255(a) is not based on differences which are reasonably related to the purpose of the Acts in which it is found and the distinction as applied to fraternal and veterans' organizations has no relevance to the purpose for which the classification is made. It clearly denies these Defendants equal protection of the laws in violation of the 14th amendment of the Federal Constitution and Article 24 of the Maryland Declaration of Rights.

"Having found such a violation, it is the holding of this Court that 255(a) of Article 27 is unconstitutional and void. The motion of the Defendants shall be granted and the charges against each Defendant shall be dismissed."

Pursuant to the provisions of Code (1974, 1984 Repl.Vol.) § 12–302(c)(1), Courts and Judicial Proceedings Article, the State entered an appeal to the Court of Special Appeals. We granted the State's petition for a writ of certiorari prior to the time that the case came on for argument in the intermediate appellate court.

■ We begin with the proposition that courts do not pass upon the wisdom of statutes nor approve or disapprove of them. The function of the courts, if and when the question is raised, is to ascertain whether the statute exceeds constitutional limits. *Salisbury Beauty Schools v. St.Bd.*, 268 Md. 32, 48, 300 A.2d 367, 378 (1973); *McBriety v. Baltimore City*, 219 Md. 223, 233, 148 A.2d 408, 414 (1959); *Givner v. Commissioner of Health*, 207 Md. 184, 192, 113 A.2d 899, 903 (1955).

Although the Maryland Constitution contains no express equal protection clause, we have said that we deem it settled that this concept of equal treatment is embodied in the due process requirement of Article 24 of the Maryland Declaration of Rights. *Attorney General v. Waldron*, 289 Md. 683, 704, 426 A.2d 929, 940–41 (1981). In fact, in *Bureau of Mines v. George's Creek*, 272 Md. 143, 156, 321 A.2d 748, 755 (1974), Chief Judge Murphy said for the Court that "the decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities . . . ." We said, however, in *Waldron* "that each provision is independent, and a violation of one is not necessarily a violation of the other." 289 Md. at 714, 426 A.2d at 946.

Last summer in *Cleburne v. Cleburne Living Center*, 473 U.S. ——, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), Justice White declared for the Court:

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 [102 S.Ct. 2382, 2394, 72 L.Ed.2d 786] (1982). Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classifica-

tion drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson,* 450 U.S. 221, 230 [101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186] (1981); *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174–175 [101 S.Ct. 453, 459, 66 L.Ed.2d 368] (1980); *Vance v. Bradley,* 440 U.S. 93, 97 [99 S.Ct. 939, 943, 59 L.Ed.2d 171] (1979); *New Orleans v. Dukes,* 427 U.S. 297, 303 [96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511] (1976). When social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude, *United States Railroad Retirement Board v. Fritz, supra,* at 174 [101 S.Ct. at 459]; *New Orleans v. Dukes, supra,* at 303, [96 S.Ct. at 2516–17], and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." 473 U.S. at ——, 105 S.Ct. at 3254, 87 L.Ed.2d at 320.

The classifications here do not pertain to race, alienage, national origin, or fundamental rights mentioned in *Cleburne* as requiring strict scrutiny, or gender or illegitimacy, there mentioned as calling "for a heightened standard of review." Accordingly, as put in *Cleburne,* "the Equal Protection Clause requires only a rational means to serve a legitimate end."

In *Supermarkets Gen.Corp. v. State,* 286 Md. 611, 409 A.2d 250 (1979), Judge Orth said for the Court:

"The basic rule is that there is a presumption of the constitutional validity of statutes. We put it thus in *Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 384 A.2d 748 (1978):

A statute enacted under the police power carries with it a strong presumption of constitutionality and the party attacking it has the burden of affirmatively and clearly establishing its invalidity; a reasonable doubt as to its constitutionality is sufficient to sustain it.... In other words, the legislature is presumed to have acted within constitutional limits so that if any state of facts reasonably can be conceived that would sustain the constitutionality of the statute, the existence of that state of

facts as a basis for the passage of the law must be assumed. [Id. at 427.]

Accord: *Condominium Owners v. Supervisor*, 283 Md. 29, 388 A.2d 116 (1978); *Davidson v. Miller*, 276 Md. 54, 69–70, 344 A.2d 422 (1975), *quoting Salsburg v. Maryland*, 346 U.S. 545, 553 n. 9, 74 S.Ct. 280 [284–85, 98 L.Ed. 281] (1954)." 286 Md. at 616–17, 409 A.2d at 253.

To like effect see *Hornbeck v. Somerset Co.Bd. of Educ.*, 295 Md. 597, 642, 458 A.2d 758, 782 (1983), and *Governor v. Exxon Corp.*, 279 Md. 410, 439, 370 A.2d 1102, 1118 (1977), *aff'd* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978).

The exemption is for "any volunteer fire company or bona fide fraternal, civic, war veterans', religious or charitable organization or corporation . . . ." The funds derived are to be "for the exclusive benefit of any such volunteer fire company or fraternal, civic, war veterans', religious or charitable organization or corporation . . . ." No part of the proceeds is to accrue to the personal use or benefit of anyone other than the enumerated organizations.[2] The fact that the organization and thus its membership conducting the gambling may benefit financially from it does not come within the prohibition against any "individual or group of individuals benefit[ing] financially from the holding of any bazaar, carnival, or raffle . . . ." The property of most of these organizations is exempt from real and personal property taxes. See Code (1957, 1980 Repl.Vol.) Art. 81, § 9. Certainly, as a general proposition of law the promotion of general charitable, civic, educational and public safety purposes is a proper object of legislation. The General Assembly could well have concluded that the types of organizations mentioned in § 255(b) were ones contributing by their presence to the general welfare and well-being of the communities in which they exist just as it reached a similar

---

2. We note specifically that, contrary to certain assumptions appearing in the press, there is no requirement that any portion of the profits accruing from such operations are to be dedicated to any charity other than the organization conducting the carnival, bazaar, raffle, etc.

conclusion when it provided the exemptions of Art. 81, § 9. The appellees draw aim only at fraternal and war veterans' organizations.  As to the veterans' organizations the General Assembly might well have concluded that the service of the members to their country was itself reason for special consideration just as there have been statutes providing for special consideration in the hiring of such veterans by the State and providing that military service during time of war shall be counted toward retirement of State employees after a certain amount of State service.  See Code (1957, 1983 Repl.Vol., 1985 Cum.Supp.) Art. 64A, § 18, and Code (1957, 1983 Repl.Vol., 1985 Cum.Supp.) Art. 65, § 88, respectively. The General Assembly might well have had reasons similar to those put forth in response to a somewhat similar challenge in *State v. Gedarro*, 19 Wash.App. 826, 579 P.2d 949 (1978), where the court said:

> "Underlying the gambling act, and consonant with the legislative recognition that professional gambling is interrelated with organized crime, are policies which attempt to restrain personal profits realized through professional gambling activities and to discourage participation in such activities.  RCW 9.46.030 is consistent with the State's interest to suppress moral decay and criminal propensities that accompany professional gambling because (1) it permits the public to engage only in pastimes that tend more toward amusement than profit, and (2) it promotes the public interest in supporting charitable activities, thus differentiating between gambling for profit and professional fund raising by a bona fide charitable organization."  19 Wash.App. at 830, 579 P.2d at 951.

Also, the General Assembly could have reasoned as did the court in *State v. McCleary*, 65 N.C.App. 174, 308 S.E.2d 883 (1983), *aff'd per curiam*, 311 N.C. 397, 316 S.E.2d 870 (1984):

> "The legislature in 1979 could reasonably have concluded that bingo games and raffles are not inherently immoral, and that they do not have a totally pernicious influence on the character of the player.  Further, that the player's

motivation of personal gain through gambling is tempered by the knowledge that his or her 'donation' is going to generally charitable or public service purposes. In addition, it could reasonably be determined that the consequences to society are not the same as those where the profit goes to commercialized gambling, or that the danger to society is different from that posed by professional gambling inasmuch as the game operator is, for example, a regulated charitable or religious organization and not a 'fakir' or 'nimble trickster.' *See State v. Lipkin,* [169 N.C. 265, 84 S.E. 340 (1915)]." 65 N.C.App. at 188, 308 S.E.2d at 893.

The concession of the appellees in their motion to dismiss that this statute would be a valid one if it required that all net proceeds be "returned to the players" or if it required that all net proceeds be "devoted to religious, charitable, civic or benevolent purposes without any of the net profits going to the benefit of the members of the clubs themselves" amounts to a challenge to the wisdom, not to the constitutionality of the section in question. *Wheeler v. State,* 281 Md. 593, 380 A.2d 1052 (1977), *cert. denied,* 435 U.S. 997, 98 S.Ct.2d 1650, 56 L.Ed.2d 86 (1978), relied upon by the trial court and by the appellees, is distinguishable upon its facts and does not command a different result.[3]

■ We hold that a rational basis exists for the enactment of § 255(a), (b). Consequently, it is constitutional and the motion to dismiss was improperly granted.

JUDGMENT REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEES TO PAY THE COSTS.

---

**3.** The trial court did not address the issue of whether § 255(a), (b) was severable from the remainder of the gambling statute. If it were, obviously that would leave standing the sections under which these persons were convicted. We, therefore, have chosen to address directly the issue passed upon by the trial judge.