517 A.2d 781

**Mary CALLAHAN**

v.

**DEPARTMENT OF HEALTH AND MENTAL HYGIENE.**

**No. 14, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Dec. 3, 1986.

Certiorari Denied Jan. 27, 1987.

Patrick J. Kearney (Hal T. Stern and Hayt, Hayt & Landau, on the brief), Rockville, for appellant.

Ann L. Rasenberger, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Laurence B. Russell, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before BLOOM, KARWACKI and WENNER, JJ.

BLOOM, Judge.

Mary Callahan appeals from a judgment of the Circuit Court for Baltimore County, which affirmed a decision of appellee's, Department of Health & Mental Hygiene's, Board of Review denying Mrs. Callahan benefits under Maryland's Medical Assistance State Only program. We shall affirm that judgment.

## Facts

The Maryland Department of Health & Mental Hygiene (Department) is responsible for administering medical care programs for certain indigent individuals. Md. Health Gen. Code Ann. § 15–103 (Supp.1985). One such program, generally known as the Medical Assistance Program (federal/state program), is partially funded with federal money and is subject to federal and state regulations. COMAR 10.09.24.01, *et seq.* To be eligible under the federal/state program, an applicant must be deemed "categorically needy"[1] or "medically needy"[2] and have "income"[3] and "resources"[4] within prescribed limits. COMAR 10.09.24.08.

The program at issue in this appeal is the Medical Assistance State Only (MASO) program. As its name implies, MASO is funded and regulated solely by the State of

---

1. *E.g.,* a person receiving Aid for Dependent Children, Supplemental Security Income, Mandatory or Optional State Supplement, etc. COMAR 10.09.24.03A; COMAR 10.09.24.03B.

2. *E.g.,* a person who is aged, blind, disabled, etc. COMAR 10.09.24.-03C.

3. "Income" is defined as "any property or service received by a person in cash or in-kind which can be applied directly, or by sale or conversion, to meet basic needs for food, shelter, and medical expenses." COMAR 10.09.25.02B(20).

4. "Resource" means "accumulated wealth over which a person has the authority or power to liquidate his interest, including cash savings, savings accounts, certificates of deposit, money market certificates, checking accounts, stocks, bonds, cash value of life insurance, burial plots, prepaid burial plans, real property, personal property, mortgages, and mutual funds." COMAR 10.09.25.02B(44).

Maryland. *See* COMAR 10.09.25.01, *et seq.* Its purpose is to extend medical benefits to those persons who meet the income and resource limitations of the federal/state program but who have not been determined to qualify thereunder as either "categorically needy" or "medically needy."

Both the MASO and the federal/state program provide that an applicant's medical expenses may be offset against (deducted from) income for purposes of determining eligibility for medical benefits ("spend-down"). COMAR 10.09.24.-02B(57); COMAR 10.09.25.02B(47). Neither program, however, permits spend-down to offset resources in excess of the eligibility limitations. COMAR 10.09.24.09C(3); COMAR 10.09.25.09C(3). This difference in treatment of income and resources generates the present appeal.

On August 9, 1984, appellant's husband, Donald Callahan, entered Baltimore County General Hospital where he remained until his demise on September 8, 1984. During his hospitalization, Mr. Callahan incurred $31,041.81 in medical expenses. To relieve this burden, appellant applied, on behalf of herself and her husband, to the Baltimore County Department of Social Services [5] for medical assistance. The Callahans' application was classified as seeking MASO benefits; it was denied because their resources of $6,255.00 exceeded the eligibility limitation of $2,600.00 for a family of two. COMAR 10.09.25.08J.

Mrs. Callahan appealed the denial and received a hearing before a Hearing Examiner of the Department of Health & Mental Hygiene, where she asserted:

(1) that the caseworker who evaluated the application failed to determine whether Mr. Callahan was disabled, thus potentially eligible for the federal/state program and ineligible for MASO; and

---

**5.** Local Departments of Social Services operate at the direction of the Maryland Department of Human Resources and make eligibility determinations with respect to Medical Assistance applications pursuant to an agreement with the Department.

(2) that regulations permitting spend-down of income while denying spend-down of resources operated to deny Mrs. Callahan equal protection under the law.

The Hearing Examiner upheld the denial of benefits finding that Mrs. Callahan was "overscale." This finding was affirmed by order of the Department's Board of Review after a hearing. Mrs. Callahan's appeal to the Circuit Court for Baltimore County was also unavailing.

*Issues*

I   Was appellant improperly considered for MASO due to a failure of the Department to determine whether appellant's husband qualified for the federal/state program?

II  Do MASO regulations that permit spend-down of income, but do not permit spend-down of resources violate the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights?

I

Appellant asserts that her application for medical assistance was improperly considered under the MASO program. It is her contention that the Department had a duty to determine whether her husband was "disabled" [6] and thus potentially eligible for the federal/state program. Under the facts of this case we disagree.

■ Maryland regulations provide that to be eligible for MASO applicants "shall have been determined to be technically ineligible under the [federal/state] program through no fault of their own." COMAR 10.09.25.02B. Although a

---

6. "Disabled" is defined as "a condition in which social and medical evidence, as reviewed by a State reviewing physician and social worker, or the Social Security Administration, indicates that a person is unable to engage in any substantial gainful activity by reason of physical or mental impairment, loss, disease, or combination of these which can be expected to result in death, or expected to last for a continuous period of 12 months or more." COMAR 10.09.25.02B(16).

disabled individual may qualify for medical assistance under the federal/state program, COMAR 10.09.24.03C, we do not believe that the quoted regulation necessarily requires the Department to make a determination as to disability when the applicant does not apply for benefits on the basis of disability.

The record does not contain the application for medical assistance, but testimony before the Department's Board of Review indicates that Mrs. Callahan did not apply for assistance based on the disability of her husband. Appellant's counsel, when questioned on this point by a member of the Board of Review, stated that Mrs. Callahan was not advised of the difference between the various medical programs offered by the State. Nevertheless, appellant can hardly be heard to complain that her husband did not receive a disability evaluation when the application did not raise the issue of disability.

■ In any event, under no circumstances could the failure to investigate disability have prejudiced appellant in any way. Since the applicants failed to meet the financial criteria for eligibility under either program, it is immaterial whether Mr. Callahan could have met an additional test to qualify under the federal/state program. Appellant suggests that she might have had a better legal argument (or an additional one) were she attacking the validity of the federal regulations instead of the state regulations based thereon, but appellee's function in administering both programs is to furnish medical assistance to those who qualify for such assistance, not legal arguments to those who fail to qualify.

## II

As discussed previously, MASO regulations, as do the federal/state program regulations, permit an applicant to offset medical expenses against income to meet program eligibility requirements. This spend-down is not available to reduce the resources of the applicant. It is appellant's

contention that a dollar is a dollar and thus it is irrational to distinguish between those who currently earn a sum of money and those who have saved a like sum of money. This distinction, appellant maintains, between those who earn and those, like herself, who save violates her equal protection rights under the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. With this we cannot agree.

At the outset we note that this appeal does not concern the propriety of the spend-down provisions of the federal/state program. Appellant invites us to examine the propriety of a United States Health Care Financing Administration (HCFA) interpretation of Title XIX, the Social Security Act, which states that a resource spend-down provision is not permissible for the federal/state program. HCFA Transmittal No. 80–58 (August 1980). We decline this invitation because the issue on this appeal concerns MASO, a program independent of the federal statute appellant would have us construe.

The Fourteenth Amendment to the United States Constitution provides: "No State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Maryland Constitution does not contain an express equal protection clause, yet it is well settled that the concept of equal treatment is embodied in the due process requirement of Article 24 of the Declaration of Rights. *State v. Wyand*, 304 Md. 721, 726, 501 A.2d 43 (1985). Article 24 has been interpreted to apply in a like manner and to the same extent as the Fourteenth Amendment, although each is independent of the other. *See Attorney General v. Waldron*, 289 Md. 683, 705, 426 A.2d 929 (1981); *Hornbeck v. Somerset Co. Bd. of Educ.*, 295 Md. 597, 640, 458 A.2d 758 (1983).

▪ The general rule under equal protection analysis is that legislation is presumed valid and classifications will be upheld if rationally related to a legitimate state interest, *Cleburne v. Cleburne Living Centers*, 473 U.S. 432, ___,

105 S.Ct. 3249, 3254, 87 L.Ed. 313, 320 (1985); *State v. Wyand, supra,* [304 Md. 721] at 726–27, 501 A.2d 43. The general rule gives way, however, when the classification impinges upon a fundamental right or is based on race, alienage or national origin. In these instances, the statute must be "suitably tailored to serve a compelling state interest." *Cleburne v. Cleburne Living Centers,* 473 U.S. at ——, 105 S.Ct. at 3255, 87 L.Ed.2d at 320. Additionally, a classification based upon gender or illegitimacy will be sustained only if substantially related to an important governmental interest. *Mississippi University for Women v. Hogan,* 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982); *Mills v. Habluetzel,* 456 U.S. 91, 99, 102 S.Ct. 1549, 1554, 71 L.Ed.2d 770 (1982).

Although this appeal does not involve a classification that the Supreme Court has identified as requiring scrutiny beyond the mere rationality test, appellant urges this court to apply some form of heightened review to the MASO regulation at issue. Appellant relies on *Attorney General v. Waldron,* 289 Md. 683, 426 A.2d 929 (1981), in which the Court of Appeals observed that the Supreme Court in recent years has employed a "heightened scrutiny" or "sharper focus" to strike down enactments implicating important private interests when such enactments would ordinarily survive the traditional mere rationality review. *Attorney General v. Waldron, supra,* at 709–714, 426 A.2d 929. The Court, quoting Professor Tribe, identified statutes that work a " 'denial of a benefit vital to the individual' " as being subject to this form of heightened review. *Attorney General v. Waldron, supra,* at 711, 426 A.2d 929; L. Tribe, *American Constitutional Law,* p. 1090 (1978).

The tendency of the Supreme Court occasionally to utilize a rational basis test that is not "toothless," *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976), has not escaped notice of the Court itself. *See, e.g., Cleburne v. Cleburne Living Centers,* 473 U.S. at ——, 105 S.Ct. at 3263, 87 L.Ed.2d at 330–31 (1985) (Marshall, J., dissenting in part); *Williams v. Vermont,* 472 U.S.

14, ——, 105 S.Ct. 2465, 2476, 86 L.Ed.2d 11, 24 (1985) (Blackman, J., dissenting). A "heightened scrutiny," "sharper focus" or more stringent application of the rationality test in the instant case, however, would have no effect on the outcome.

■ The purpose of the MASO is to provide medical benefits for persons who would financially qualify for the federal/state program, but who fail the other qualifications thereunder. It cannot be doubted that Maryland has a legitimate interest in providing medical benefits supplemental to those funded, in part, with federal money. A regulation that establishes financial eligibility requirements for supplemental medical benefits identical with those of the federal/state program is rationally related to that legitimate state purpose.

Furthermore, we cannot say that there is no rational basis for the federal regulation, upon which the Maryland Rule is based, permitting "spend-down" of income but not of resources. Congress specifically provided for an income "spend-down" when it enacted the Medicaid program in 1965; it made no similar provision with respect to assets or resources. 42 U.S.C. § 1396a(a)(17). Although it is true, as appellant argues, that failure to make an express provision for resources "spend-down" is not necessarily the equivalent of a legislative prohibition of such an exception, its absence from the statute is not lacking in significance. It is rational to conclude that many people requiring medical care beyond their means may be living on fixed income pensions or social security benefits that are not subject to voluntary reduction to meet the limited income test of either the federal/state or the state only program. Without a "spend-down" provision those people could not qualify for the assistance they desparately need. On the other hand, one can voluntarily reduce his assets or refrain from accumulating resources in order to qualify for needed medical assistance.

We echo the sentiments expressed by the Supreme Court in a similar context when it stated:

"We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of the Court.... [T]he Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."

*Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162–63, 25 L.Ed.2d 491, 503 (1970).

Having concluded that COMAR 10.25.09C(3) is rationally related to a legitimate government interest, we, too, decline to second-guess those officials who are responsible for the allocation of limited public funds "among the myriad of potential recipients."

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.