MARYLAND COAL & REALTY CO. ET AL. *v.*
BUREAU OF MINES, ET AL.

[No. 24, October Term, 1949]

628

632

*Decided November 11, 1949.*

Rehearing denied December 6, 1949.

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Walter C. Capper* and *William S. Jenkins,* with whom were *Capper and Jenkins* on the brief, for the appellants.

*Ward B. Coe, Jr., Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Paul M. Fletcher, Assistant State's Attorney for Allegany County,* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit for a declaratory decree and an injunction challenges the validity of the Maryland Strip Mining Act. Laws of 1947, Sp. Sess., ch. 16, Code Supp. 1947, art. 89, secs. 178-192.

Complainants are Maryland Coal and Realty Company, owner of bituminous coal land in Allegany County, and Tri-State Construction Company, lessee with the right to strip mine the coal from the land. Defendants are the Bureau of Mines of Maryland, J. J. Rutledge, Chief Mine Engineer and Director of the Bureau, and Morgan C. Harris, State's Attorney for Allegany County. Com-

plainants are seeking a decree declaring the Strip Mining Act unconstitutional and restraining enforcement of the Act. They are now appealing from a decree dismissing their bill of complaint.

The tremendous increase in open pit mining or "strip mining" during the depression in 1929 and thereafter and during the Second World War brought remedial legislation in the soft coal States. In 1943 the Legislature of Illinois enacted a Strip Mining Act, but in 1947 the Illinois Supreme Court held the Act unconstitutional. *Northern Illinois Coal Corporation v. Medill,* 397 Ill. 98, 72 N. E. 2d 844. That Court held there was arbitrary discrimination and it was not convincing that the Act either promoted the public health or conserved natural resources. The testimony of two witnesses that the pools in the open cuts, like any other stagnant water, would breed bacteria and mosquitoes, was held insufficient evidence to show that the public health was endangered.

In Pennsylvania the effects of strip mining were more widespread and more glaring. Over large areas in Western and Central Pennsylvania strip mining operations left the land scarred and subject to soil erosion and stream pollution. In 1945 the Legislature of Pennsylvania, to meet the urgent need for remedial legislation, enacted the Bituminous Coal Open Pit Mining Conservation Act, which imposed regulations designed to eliminate the undesirable effects of strip mining. 52 P. S. § 1396.1 *et seq.* The statute was assailed because it was a special law applicable to strip mining of bituminous coal but not applicable to strip mining of anthracite coal. In 1948 the Supreme Court of Pennsylvania held the Act constitutional. *Dufour v. Maize,* 358 Pa. 309, 56 A. 2d 675, 1 A. L. R. 2d 563. It has been questioned in some reviews whether the discrimination in the Act can be justified on the theory that bituminous spoil banks are more extensive and more conspicuous than the anthracite spoil banks. These critics have suggested that the strip mining of anthracite causes the same evils as the strip mining of bituminous coal. 96 Univ. of Pa. L. Rev. 703,

704; 1948 Annual Survey of American Law, 109. In Maryland, however, that objection does not arise, because the only coal mined in this State is bituminous.

For a short time strip mining operations were carried on in Allegany County about 1920, but they were discontinued until about 1943. According to the record, more than a million tons of coal were strip mined in Allegany County from 1943 to 1948, inclusive. Tri-State Construction Company began to strip mine on the land of Maryland Coal and Realty Company in April, 1946, under a sub-lease, and on July 1, 1947, obtained a six-year lease from the owner. The lessee invested about $140,000 in equipment. It strip mined approximately 200,000 tons of coal in 1946 and 1947. Most of its operations have been conducted in the vicinity of Vale Summit near Clarysville.

Our Strip Mining Act, which was declared by the Legislature at its extra session in November, 1947, to be an emergency law necessary for the immediate preservation of public health and safety, and took effect on its approval by the Governor November 10, 1947, provides that before any operator shall engage in open pit mining of bituminous coal or fire clay in this State, he shall pay a filing fee of $100 and register with the Bureau of the Mines by filing a certificate giving an estimate of the number of acres of land he will affect by open pit mining during one year following the date of filing. He is also required to file a bond conditioned that he shall faithfully perform all of the requirements of the Act. The bond shall be in an amount to be specified by the Director of the Bureau, but in no event shall be less than $5,000 nor more than $20,000.

The main requirement of the Act to which appellants make most strenuous objection appears in Section 186, which provides: "Within one year after the operation is completed, the operator shall place sufficient overburden in the open cut to cover the exposed faces of coal or fire clay seams and shall place such additional overburden in the open cut and level the peaks and

ridges of spoilbanks to such degree as the Director may prescribe necessary to restore the surface to a condition favorable to the growth of trees, grasses or shrubs."

The Act provides that its provisions shall not apply to Garrett County or to any person, partnership or corporation that does not mine in excess of 250 tons of coal in any period of twelve successive calendar months.

Appellants claim that the Act is an arbitrary and unreasonable invasion of their property rights in violation of the Fourteenth Amendment of the Constitution of the United States and Article 23 of the Maryland Declaration of Rights. It is universally conceded that the police power of the State includes everything essential to the public health, morals and safety. Beyond this the State may interfere whenever the public welfare demands it, and a large discretion is necessarily vested in the Legislature to determine what the welfare of the public requires and what measures are necessary for the promotion of the public welfare. However, the decision of the Legislature as to what is a proper exercise of its police powers is not final or conclusive but is subject to review by the courts. It has been stated that the Legislature may not, under the guise of protecting the public, arbitrarily interfere with private business, or impose unnecessary and unreasonable restrictions upon lawful occupations. *Spann v. Gaither*, 152 Md. 1, 12, 136 A. 41, 50 A. L. R. 620; *Jack Lewis, Inc., v. Mayor and City Council of Baltimore*, 164 Md. 146, 152, 164 A. 220; *Lawton v. Steele*, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385; *Jay Burns Baking Co. v. Bryan*, 264 U. S. 504, 44 S. Ct. 412, 68 L. Ed. 813, 32 A. L. R. 661. In other words, to justify the State in interposing its authority for the public welfare, it must appear (1) that the interests of the public generally, as distinguished from the members of a particular class, require such interposition, and (2) that the means adopted are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individual citizens.

Tested by these principles, the design and purposes of the Maryland Strip Mining Act of 1947 have a real and substantial relation to the police power. The Legislature declared that the Act shall be deemed to be an exercise of the police powers of the State, and specifically stated that the purposes of the Act are: (1) to provide for the conservation and improvement of areas of land affected in the mining of bituminous coal and fire clay by the open pit or stripping method, (2) to aid in the protection of birds and wild life, (3) to enhance the value of such land for taxation, (4) to decrease soil erosion, (5) to aid in the prevention of the pollution of rivers and streams, (6) to prevent combustion of unmined coal, and (7) generally to improve the use and enjoyment of said lands.

At the trial of this case Dr. Joseph T. Singewald, Director of the Department of Geology, Mines and Water Resources of the State of Maryland, explained that strip mining without backfilling results in denudation of vegetation, which in turn causes a decrease in the water supply. He also stated that strip mining lowers the water table under the land affected. Joseph F. Kaylor, Director of the Department of State Forests and Parks, testified that the spoil banks in Allegany County are not fit for plant growth, but will have to be converted into soil before they can be used again. He stated that generally the slope on these banks is too steep to produce vegetation. He further stated that the Department of State Forests and Parks had planted trees on some of the leveled spoil banks on Meadow Mountain in Garrett County with good results, and that he was of the opinion that the leveling of the spoil banks in Allegany County would considerably increase the productivity of the land. Dr. Ernest J. Schreiner, an expert in the United States Forest Service, expressed the opinion that if the spoil banks were leveled to a grade of not more than 20 per cent, the land would be restored to a condition favorable for reforestation in one-fourth of the time that it would take Nature to reach that condition without such level-

ing. It was further testified that stagnant water is found quite often on the spoil banks, and this is liable to contaminate the streams and sources of water supply. Moreover, we consider the means adopted by the Legislature to accomplish the purposes of the Strip Mining Act as reasonably necessary for those purposes. Nor are the requirements of the Act unduly oppressive upon those engaged in strip mining. The overburden is removed by bulldozers and power shovels or by drag lines until the coal is reached, and then the exposed coal is removed with the shovels. Philip J. Jenkins, president of Tri-State Construction Company, admitted on the stand that the leveling of the spoil banks could be done with the equipment they now use. The fact that the statute has the effect of increasing the cost of the strip mining does not make the statute unconstitutional. The exercise of the police power is for the promotion of the public good, and by virtue of it the State may lawfully impose upon the exercise of private rights such burdens and restraints as may be reasonably necessary and proper to secure the general health and safety.

Nor does the Act deprive appellants of equal protection of the laws in violation of the Fourteenth Amendment on the ground that it does not apply to the quarrying of limestone and slate. It is not the purpose of the equal protection clause to take from the State the power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the Court can declare it beyond the authority of the Legislature. *Jeffrey Mfg. Co. v. Blagg*, 235 U. S. 571, 35 S. Ct. 167, 169, 59 L. Ed. 364. There are very substantial differences between the effects of strip mining of coal and the effects of quarrying of limestone and slate. The cuts in the ground from strip mining are sometimes 50 feet deep. Many of the cuts are a half mile long. The spoil bank is often 20 feet high, and sometimes 50 feet high. Limestone and other quarries affect relatively small areas and in many cases no spoil banks at all are left after the operations are over. In

strip mining for coal the overburden is piled beside the open pit, and in most instances the operators have failed to backfill the cuts or level the spoil banks. Frank T. Powers, of Frostburg, District Mine Inspector, estimated that 95 per cent of the operations of Tri-State Construction Company at Vale Summit have been conducted in the vicinity of abandoned deep mines. Sometimes strip mine operation breaks into a deep mine and creates the danger of flooding the deep mine. Fire, another danger created by strip mining, does not arise from quarrying for limestone or slate. When a vein of coal is left exposed, it may be ignited and burn into a deep mine with great resultant loss. In *United States v. Carolene Products Co.*, 304 U. S. 144, 58, S. Ct. 778, 783, 82 L. Ed. 1234, Justice Stone said: "The Fifth Amendment has no equal protection clause, and even that of the Fourteenth, applicable only to the states, does not compel their Legislatures to prohibit all like evils, or none. A Legislature may hit at an abuse which it has found, even though it has failed to strike at another."

Appellants further complain because the Strip Mining Act does not prescribe any standard to guide the Director of the Bureau of Mines in fixing the amount of the operator's surety bond. It is true that the Maryland Act is more flexible than the Pennsylvania Act, which demands a specific amount of bond per acre to be stripped. However, we do not think the Maryland Act delegates such unreasonable and arbitrary power to the Director as to make it necessary to strike down the Act on that account. As the amount of the bond must be not less than $5,000 nor more than $20,000, the premium, according to the record, could vary only between $50 and $200. Dr. Rutledge, Director of the Bureau of Mines, testified that the requisite amount of bond should vary according to all the conditions in each particular case. In the instant case he considered that a bond in the amount of $350 per acre would be reasonable. In another specific case, which he cited, where the operator. himself was the owner of the land and was filling the

spoil banks into the cuts, he considered it unnecessary to require that much. In each case the bond would depend to some extent on the estimated cost of backfilling and leveling. Moreover, if the operator should feel that the Director abused his discretion by requiring a bond in an unreasonable amount, he has the remedy of appeal. Code Supp. 1947, art. 89, sec. 187.

We now come to Section 186, which requires the operator to place sufficient overburden in the open cut to cover the exposed seams of coal or fire clay and to place overburden in the cut and level the spoil banks "to such degree as the Director may prescribe necessary to restore the surface to a condition favorable to the growth of trees, grasses or shrubs." Appellants say that this section does not prescribe a definite standard to guide the Director either (1) as to amount of overburden the operator must backfill into the cut, or (2) as to how far the operator must level the peaks and the ridges of the spoil banks, and thus it delegates arbitrary power to the Director.

The police power of the State is ordinarily exercised by the Legislature, but the right to exercise the power may be delegated to an administrative agency, and the agency may delegate to subordinates the purely administrative duties incident to the power. *Tighe v. Osborne,* 149 Md. 359, 131 A. 801, 43 A. L. R. 819; *Pocomoke City v. Standard Oil Co.,* 162 Md. 368, 376, 159 A. 902. Thus the Legislature may delegate to an administrative officer the power to determine specific facts upon which an application of the police power is made to depend. *Weer v. Page,* 155 Md. 86, 92, 141 A. 518; *Matthaei v. Housing Authority of Baltimore City,* 177 Md. 506, 516, 9 A. 2d 835. It has been explained that there are many things upon which salutary legislation must depend but which cannot be known to the lawmaking power, and consequently must be the subjects of inquiry and determination outside the halls of legislation. *Field v. Clark,* 143 U. S. 649, 12 S. Ct. 495, 505, 36 L. Ed. 294; *United States v. Grimaud,* 220 U. S. 506, 31 S. Ct. 480, 484, 55

L. Ed. 563. In addition, the Maryland Act affords a check on the Director of the Bureau of Mines by providing that any operator or landowner who shall be aggrieved by any requirement of the Act or any administrative regulation, directive or order under it, shall have the right to file a petition to the Circuit Court praying for remedy thereof. The Court shall thereupon order the Director to show cause why the petitioner should not have the remedy prayed for. The Act further provides that either party may appeal from the decision of the Court to the Court of Appeals.

The subject of delegation of the police power was considered by the Court in *State v. Hyman*, 98 Md. 596, 619, 57 A. 6, 10, 64 L. R. A. 637, 1 Ann. Cas. 742. The statute under consideration in that case prohibited the use of any room in any tenement or dwelling for the manufacture of clothing until a permit was given by the Chief of the Bureau of Industrial Statistics. In sustaining the delegation of power Chief Judge McSherry said: "It may be conceded that some of these provisions, if harshly administered may be or become oppressive; but it by no means follows that the law itself is therefore not a legitimate exercise of the police power. It is not to be assumed that the public functionary will act in an oppressive or unlawful manner. Discretion must be reposed somewhere. If an official should transcend the legitimate limits of the authority with which the statute clothes him, the injured party is not without redress."

Appellants further contend that the Act is discriminatory because it exempts operators who do not mine more than 250 tons of coal in any period of twelve successive calendar months. We do not consider this exemption to be unreasonable. Its main purpose is presumably to permit an owner of land to strip mine coal for his own use. The same provision was included in the Pennsylvania Act and, as we have said, that Act was upheld by the Court. *Dufour v. Maize*, 358 Pa. 309, 56 A. 2d 675, 679, 1 A. L. R. 2d 563, 570. Appellants admitted in the Court below that they do not know of any operator

who has mined less than 250 tons of coal a year and stayed in business. It is quite evident that operations on such a small scale would not cause the damage or the danger that would follow from large operations.

The final question is whether the Act is invalid on the ground of discrimination, having effect in Allegany County but not in Garrett County. The Act purports to be a general law applying to all strip mining of bituminous coal and fire clay throughout the State, except Garrett County. However, it is well known that the only coal mined in Maryland is in Garrett and Allegany Counties. Thus the Act does not apply to the mining of coal anywhere except in Allegany County. It has long been the policy of the State of Maryland to allow the enactment of a local law which affects only one county or exempts a particular county from the operation of a public general law. *Stevens v. State,* 89 Md. 669, 674, 43 A. 929; *Ruehl v. State,* 130 Md. 188, 195, 100 A. 75. A public general law, otherwise valid, need not be applicable to all parts of the State, provided that it applies to all persons within the territorial limits prescribed in the statute, and it does not work any harmful discrimination. *American Coal Co. v. Allegany County Com'rs.,* 128 Md. 564, 580, 98 A. 143; *State ex rel. Webster v. County Com'rs. of Baltimore County,* 29 Md. 516, 520. But it is equally clear that the power of the Legislature to restrict the application of statutes to localities less in extent than the State, as the exigencies of the several parts of the State may require, cannot be used to deprive the citizens of one part of the State of the rights and privileges which they enjoy in common with the citizens of all other parts of the State, unless there is some difference between the conditions in the territory selected and the conditions in the territory not affected by the statute sufficient to afford some basis, however slight, for classification. *Dasch v. Jackson,* 170 Md. 251, 270, 183 A. 534.

In the case at bar it was testified that there is coal on both sides of the boundary line between Garrett and Allegany Counties, and exactly the same type of strip

mining is conducted in Garrett as in Allegany. It was also testified that there is no difference in the machinery used, and no difference in the kind of coal obtained. In fact, it was shown that there is one strip mining operation in Garrett County where the coal is loaded in a tipple at Barton in Allegany County. The coal produced in Garrett County by strip mining is in direct competition with the coal produced by strip mining in Allegany County. There is no difference in conditions that would make strip mining a menace to public health and safety in Allegany but harmless in Garrett. There is no rational basis for the territorial classification, and no justification for discrimination between Garrett and Allegany Counties. It violates the equal protection clause of the Fourteenth Amendment and Article 23 of the Maryland Declaration of Rights.

Therefore, the exemption of Garrett County from the provisions of the Act renders the Act void. The decree dismissing the bill of complaint must be reversed.

*Decree reversed and case remanded for the passage of a decree in accordance with this opinion, with costs.*