635 A.2d 967

Douglas W. VERZI t/a Madonna Auto Sales and Services, Inc.

v.

BALTIMORE COUNTY, Maryland.

No. 47, Sept. Term, 1993.

Court of Appeals of Maryland.

Jan. 17, 1994.

David E. Carey and Augustus F. Brown, on brief, Bel Air, for appellant.

Nancy C. West, Asst. Co. Atty. (Stanley J. Schapiro, Acting Co. Atty., on brief), Towson, for appellee.

Argued before MURPHY, C.J. ELDRIDGE, RODOWSKY, McAULIFFE *, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

We are asked in this case to decide whether Baltimore County's "location requirement" for towing operators, i.e., a requirement that a licensed tow operator have a place of business within the county before that operator may be called by police to tow vehicles which have been disabled by accidents, violates either Article 24 of the Maryland Declaration of Rights or the federal constitution.

I.

In order to protect the general welfare and public interests of the community, prevent fraud, and eliminate unnecessary traffic problems and delays, Baltimore County has declared that the towing of vehicles which are disabled in the County by collision or other accident is subject to the supervision and administrative control of the County. The regulations affecting county towing businesses are found in Title 24, Article VI, §§ 24–221 to 24–235 of the Baltimore County Code (1988, Supp.1993) ("the Code").[1]

According to the regulatory scheme, prospective Baltimore County towing operators must apply for a license with the Baltimore County Department of Permits and Licenses ("DPL") in order to tow disabled vehicles from the scene of an accident occurring in Baltimore County. § 24–226. The De-

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. When the litigation in this case began, the law governing the towing of vehicles in Baltimore County was codified in Title 17, Article V of the Baltimore County Code. The law was recodified in 1989 and is now contained in Title 24, Article VI, §§ 24–221 to 24–235 of the Baltimore County Code. The only substantive change from the earlier version is a vesting of oversight and enforcement authority to the Department of Permits and Licenses in addition to the Police Department.

partment of Permits and Licenses then forwards the application to the Baltimore County Police Department ("BCPD") in order to ensure that the applicant meets various requirements such as adequate facilities, proper registration and maintenance of towing vehicles, etc. § 24–228. The license approval process is governed by § 24–229, which provides in pertinent part:

"(a) New license towers shall be approved by the department of permits and licenses based on the need for additional service. If the need does not exist, the application will not be approved. The transfer of an existing license shall be treated in the same manner as a new license, and any such transfer shall be subject to all provisions applicable thereto."

Section 24–230 governs the procedure by which towing operators are dispatched. That section provides in part:

"The chief of police shall retain a current list of all duly licensed towing operators. Whenever the services of a towing vehicle shall be required and request is made to the police department for the providing of such services, the police department shall call the licensed towing operator located in the county whose place of business is closest to the scene of the accident, except when an owner requests a specific licensed tow company; provided that such tow company can respond within a reasonable time."

In order to simplify the dispatching procedure, the BCPD has divided the county into separate geographical tow areas. Each licensed tow operator is assigned a tow area and, in the event of an accident, is called to tow vehicles in its area only, unless a motorist requests a specific operator serving another tow area. No provision is made for the towing of vehicles disabled by other than accident.

Douglas Verzi is the owner and operator of Madonna Auto Sales and Services, Inc.. The business, which includes towing services, is located in Harford County, about two and one-half miles from the Baltimore County line. Verzi's February, 1987 application for a tower's license was denied in November,

1987. Verzi appealed the denial to the Baltimore County Board of Appeals ("the Board") pursuant to § 24–225.[2] The Board determined that there was an established need for another tower in the section of Baltimore County that Verzi wished to serve, but it held that § 17–64 (currently § 24–230) prohibited the issuance of a towing license to an operator not located in Baltimore County. Verzi sought judicial review of the Board's decision in the Circuit Court for Baltimore County. That court reversed the Board's decision, citing the Board's finding of a demonstrated need for a tower and holding that the eligibility for a towing license was governed by § 17–63 (currently § 24–229), a section which contains no location restrictions.

Pursuant to the court's order, the County granted Verzi a towing license. The BCPD, however, declined to assign him a towing area, relying on § 24–230 which requires the police to call "the licensed towing operator *located in the county* whose place of business is closest to the scene of an accident, except when an owner requests a specific licensed tow operator...." (Emphasis added). As a result of the BCPD's failure to assign him a tow area, Verzi has not been called to tow vehicles disabled by accident except on two occasions in which motorists specifically requested his services.

Verzi filed suit in the Circuit Court for Baltimore County, seeking a declaratory judgment that the location requirement in § 24–230 of the Baltimore County Code is unconstitutional and requesting a writ of mandamus ordering the County to assign Verzi a tow area and to call him in the event that a tow operator is needed in his tow area. That court granted summary judgment for the County, declaring the location requirement in § 24–230 constitutional. Verzi noted an appeal to the Court of Special Appeals, and this Court issued a Writ

---

2. Baltimore County Code (1988, Supp.1993), § 24–225 provides:
   "**Sec. 24–225. Rights to appeal.**
   Any person who is aggrieved by a decision of the department of permits and licenses shall have the right to file an appeal within thirty (30) days thereafter for a hearing in the matter by the board of appeals.

of Certiorari prior to consideration by the intermediate appellate court. 331 Md. 178, 626 A.2d 967. We shall reverse the judgment of the Circuit Court for Baltimore County.

## II.

Verzi asserts that the location requirement found in § 24–230 of the Baltimore County Code violates the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. Section I of the Fourteenth Amendment provides in part:

> "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

Article 24 of the Maryland Declaration of Rights states:

> "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, our outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

■ The doctrine of equal protection of the laws is an integral element of our theory of government. Justice Jackson, in an oft-quoted passage, succinctly summed up both the doctrine and its purpose:

> "Invocation of the equal protection clause ... does not disable any governmental body from dealing with the subject at hand. It merely means that the prohibition or regulation must have a broader impact. I regard it as a salutary doctrine that cities, states and the Federal Government must exercise their powers so as not to discriminate between their inhabitants except upon some reasonable differentiation fairly related to the object of regulation. This equality is not merely abstract justice. The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. Conversely, nothing opens

the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected. Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation."

*Railway Express Agency v. New York,* 336 U.S. 106, 112–13, 69 S.Ct. 463, 466–67, 93 L.Ed. 533, 540 (1949) (Jackson, J., concurring). Although the Maryland Constitution does not contain an express guarantee of equal protection of the laws, it is well established that Article 24 embodies the same equal protection concepts found in the Fourteenth Amendment to the U.S. Constitution. *See, e.g., Kirsch v. Prince George's County,* 331 Md. 89, 96, 626 A.2d 372, 375, *cert. denied,* —— U.S. ——, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993); *Murphy v. Edmonds,* 325 Md. 342, 353, 601 A.2d 102, 107 (1992); *Hargrove v. Board of Trustees,* 310 Md. 406, 416, 529 A.2d 1372, 1377 (1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 766 (1988); *State v. Wyand,* 304 Md. 721, 726, 501 A.2d 43, 46 (1985), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 893 (1986); *Hornbeck v. Somerset County Bd. of Educ.,* 295 Md. 597, 640, 458 A.2d 758, 780–81 (1983); *Attorney General v. Waldron,* 289 Md. 683, 704–05, 426 A.2d 929, 940–41 (1981); *Bruce v. Director, Chesapeake Bay Affairs,* 261 Md. 585, 600, 276 A.2d 200, 208 (1971).

■ We have consistently recognized that the federal Equal Protection Clause and the Article 24 guarantee of equal protection of the laws are complementary but independent, and "a discriminatory classification may be an unconstitutional breach of the equal protection doctrine under the authority of Article 24 alone." *Attorney General v. Waldron, supra,* 289 Md. at 715, 426 A.2d at 947. *See also Kirsch, supra,* 331 Md. at 97, 626 A.2d at 376; *Hornbeck, supra,* 295 Md. at 640, 458 A.2d at 781. At the same time, however, the two provisions are similar enough that we will consider Supreme Court decisions interpreting the federal clause as persuasive, but not controlling, authority for our interpretation of Article 24.

Recently, we reviewed the traditional standards under which equal protection claims have been judged. In *Kirsch, supra,* we relied on Judge Eldridge's comprehensive review of equal protection analysis from *Murphy v. Edmonds, supra.*

"In most instances when a governmental classification is attacked on equal protection grounds, the classification is reviewed under the so-called 'rational basis' test. Generally under that test, a court 'will not overturn' the classification unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [governmental] actions were irrational.' A statutory classification reviewed under the rational basis standard enjoys a strong presumption of constitutionality and will be invalidated only if the classification is clearly arbitrary.

"Where, however, a statutory classification burdens a 'suspect class' or impinges upon a 'fundamental right,' the classification is subject to strict scrutiny. Such statutes will be upheld under the equal protection guarantees only if it is shown that 'they are suitably tailored to serve a compelling state interest.'

"Finally, there are classifications which have been subjected to a higher degree of scrutiny than the traditional rational basis test, but which have not been deemed to involve suspect classes or fundamental rights and thus have not been subjected to the strict scrutiny test. Included among these have been classifications based on gender, discrimination against illegal aliens with regard to a free public education, and a classification under which certain persons were denied the right to practice for compensation the profession for which they were qualified and licensed."

*Kirsch v. Prince George's County,* 331 Md. at 98, 626 A.2d at 376 (quoting *Murphy v. Edmonds,* 325 Md. at 355–357, 601 A.2d at 108–109 (citations omitted)).

We also noted in *Kirsch* that the Supreme Court has on occasion varied from the strict, three-level analysis of equal protection claims. In recent years, the Court has applied

rational basis scrutiny to several statutes and found them lacking. *See* discussion in *Kirsch, supra,* 331 Md. at 98–104, 626 A.2d at 376–379 (citing *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (invalidating a city ordinance which required certain group homes, including homes occupied by mentally retarded citizens, to obtain a special use permit); *Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985) (striking down a statute which provided a state tax exemption for Vietnam veterans who resided in the state before a certain date); *Williams v. Vermont,* 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985) (invalidating automobile registration tax scheme which exempted cars purchased and on which sales tax was paid in Vermont); *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (striking down gross premiums tax scheme which favored domestic insurance companies over out-of-state firms); *Zobel v. Williams,* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (invalidating Alaska's dividend distribution scheme that based amount of dividend on length of Alaskan residency)).

We, too, have not hesitated to carefully examine a statute and declare it invalid if we cannot discern a rational basis for its enactment. "The vitality of this State's equal protection doctrine is demonstrated by our decisions which, although applying the deferential standard embodied in the rational basis test, have nevertheless invalidated many legislative classifications which impinged on privileges cherished by our citizens." *Attorney General v. Waldron, supra,* 289 Md. at 715, 426 A.2d at 947. Although we have traditionally accorded legislative determinations a strong presumption of constitutionality, *Murphy v. Edmonds,* 325 Md. at 356, 601 A.2d at 114; *Briscoe v. Prince George's Health Dep't,* 323 Md. 439, 448, 593 A.2d 1109, 1113 (1991), we have also required that a legislative classification rest upon "some ground of difference having a fair and substantial relation to the object of the legislation." *State Bd. of Barber Examiners v. Kuhn,* 270 Md. 496, 507, 312 A.2d 216, 222 (1973).

In *Mayor and City Council of Havre de Grace v. Johnson,* 143 Md. 601, 123 A. 65 (1923), the city of Havre de Grace enacted a local ordinance which required an individual to establish city residency for a minimum of six months before he or she could operate a car for hire within the city limits. The city claimed that the ordinance was enacted to remove congestion from the streets and to reduce the large number of "irresponsible drivers" of cars for hire. We found no true relationship between the stated object of the legislation and the distinction between resident drivers and nonresident drivers, and we declared the ordinance invalid. There was so little relation between the classification and its proffered justification, in fact, that the classification raised questions about the true goal of the ordinance.

"It certainly cannot be seriously argued that an ordinance, which forbids nonresidents of Havre de Grace from transacting on its streets the same business which they permit residents to transact there, is a reasonable regulation designed in the interest of the public health or welfare, because we certainly cannot assume as a matter of law that the operation of an automobile hiring business by a nonresident of Havre de Grace would, because of his nonresidence, constitute a greater peril to the health or welfare of that town than it would if operated by a resident. A more reasonable and probable view would be that it was intended to confer the monopoly of a profitable business upon residents of the town."

*Mayor & City Council of Havre de Grace v. Johnson,* 143 Md. at 608, 123 A. at 67. By effectively conferring a monopoly upon residents of the city, Havre de Grace unconstitutionally infringed on the right of nonresidents to ply their trade within the city limits.

Residency was also a classifying characteristic in *Bruce v. Director, supra. Bruce* concerned state statutes which imposed residency requirements and territorial licensing requirements on commercial crabbing and oystering in Maryland. The statute required commercial crabbers and oystermen to obtain licenses issued by their county of residence, and

it restricted commercial crabbing and oystering to that county in which a license was issued. Because counties could not issue licenses to nonresidents, commercial watermen who resided in one of 13 tidewater counties could not cross county lines to pursue their trade, and residents of the 10 nontidewater counties in Maryland were effectively foreclosed from all commercial crabbing and oystering in the state. We recognized in *Bruce* that although a distinction between residents of different counties may be valid for some purposes, "an otherwise legitimate classification of residents which may be made for many purposes, cannot be made if it affects a right . . . which, as citizens of this State, they enjoy equally." *Id.*, 261 Md. at 606, 276 A.2d at 211. The territorial licensing restrictions in *Bruce* "unconstitutionally discriminate[d] among the residents of the 13 tidewater counties of the State, and also between the residents of those counties and the 10 remaining counties and Baltimore City." *Id.* Like the city ordinance held invalid in *Havre de Grace v. Johnson, supra*, the state laws examined in *Bruce* had no real and substantial relation to the object of the legislation, and they unconstitutionally infringed on the right of commercial crabbers and oystermen to ply their trade throughout the state.

We have also held that territorial classifications were invalid when they imposed greater burdens on paperhangers in Baltimore City than on paperhangers elsewhere in the state, *Dasch v. Jackson*, 170 Md. 251, 183 A. 534 (1936), and when the classifications imposed greater restrictions on commercial mining in only one of two similarly situated counties. *Maryland Coal and Realty Co. v. Bureau of Mines*, 193 Md. 627, 69 A.2d 471 (1947). Both of these cases, like *Havre de Grace v. Johnson, supra*, and *Bruce, supra*, concerned territorial restrictions on economic activity that tended to favor residents of one county over another. Both were determined to violate equal protection guarantees.

We have, on occasion, found territorial classifications to be legitimate. We have upheld distinctions, based on county location, among types of businesses which are subject to Sunday closing laws, *Supermarkets Gen. Corp. v. State*, 286

Md. 611, 624, 409 A.2d 250, 257 (1979), *appeal dismissed,* 449 U.S. 801, 101 S.Ct. 45, 66 L.Ed.2d 5 (1980), distinctions among geographical areas for purposes of enforcing vehicle emissions controls, *Department of Transp. v. Armacost,* 299 Md. 392, 474 A.2d 191 (1984), and distinctions among sections of Baltimore City for purposes of regulating billboards. *Donnelly Advertising Corp. v. City of Balt.,* 279 Md. 660, 370 A.2d 1127 (1977). In each of these cases, persons who were adversely affected complained that a legislative classification treated them differently from those who were similarly situated elsewhere. In all of these cases, however, we determined that the primary legislative purpose of the classification was other than economic, and that the classification bore a real and substantial relation to the object of the legislation. In *Supermarkets, supra,* we reiterated the statement of the Supreme Court in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), that a legislature may validly determine that a day of rest and recreation will benefit the state's population, and that it may make exceptions to general closing laws for the health of the populace and for the enhancement of the recreational atmosphere of the day. *Supermarkets, supra,* 286 Md. at 618–19, 409 A.2d at 254. The economic ramifications were incidental to the primary purpose of creating a day of rest. Similarly, the classification among regions made in *Armacost* was created on the basis of air quality measurements, and the primary purpose of the classification was to reduce pollutants and to comply with the federal Clean Air Act. *Armacost, supra,* 299 Md. at 401, 474 A.2d at 195. Again, the economic ramifications were secondary to the primarily environmental purpose of the classification. The same is true in *Donnelly,* in which the billboard restrictions applied only to that section of the city designated as an urban renewal zone. *Donnelly, supra,* 279 Md. at 670–71, 370 A.2d at 1133. The clear purpose of the territorial classification was to rejuvenate a blighted region of the city, and we had no trouble finding a real and substantial relation between the classification and the object of the legislation. *Id.*

The County submitted the case of *County Comm'rs of Charles County v. Stevens*, 299 Md. 203, 473 A.2d 12 (1984), to this Court at oral argument, offering it as an example of an economic territorial classification which was upheld. *Stevens* is a case which concerned the application of the federal Commerce Clause to a county landfill ordinance. The County suggests that we should follow *Stevens'* reasoning in the case *sub judice* because under a Commerce Clause analysis as set forth in *Stevens*, the location requirement in the towing ordinance is valid. The County's reliance on *Stevens* is misplaced.

In *Stevens*, Charles County had enacted an ordinance which declared that a county-run landfill could not accept trash which originated outside the county. We determined that the County was, in that instance, acting as a market participant, and that the ordinance did not therefore violate the federal Commerce Clause. *Id.* at 216, 473 A.2d at 19. Contrary to the County's assertion, that situation and the instant case are factually dissimilar. In issuing towing licenses and deciding which licensee may tow which vehicles, Baltimore County functions not as a market participant but as a pure market regulator. Moreover, if the federal doctrine of interstate relations (which consists not only of the Commerce Clause, but also of the closely related Privileges and Immunities Clause of Art. IV, sec. 2) has any relevance here, it is solely by analogy, and application of the doctrine does not favor the County's argument.

In areas of economic regulation, as we have discussed, this Court has been particularly distrustful of classifications which are based solely on geography, i.e., treating residents of one county or city differently from residents of the remainder of the State. Although we have not yet expressly stated so, it is evident that elements of our Article 24 equal protection jurisprudence are analogous to those found in the Commerce Clause and the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution. The two federal clauses are similar: both originated in the so-called "states' relations" article of the Articles of Confederation, and both are concerned with a limitation on states' abilities to give

economic preferences to their own citizens. *See* Laurence H. Tribe, *American Constitutional Law*, § 6–35, at 536 (2d ed. 1988). Article 24's guarantee of equal protection of the laws is concerned, *inter alia*, with limiting counties' abilities to give economic preferences to their own citizens. *See, e.g., Havre de Grace v. Johnson, supra.* Just as the Privileges and Immunities Clause frowns on arbitrary distinctions among citizens of different states, particularly in the area of economic regulation, the concept of equal protection of the laws found in Article 24 frowns on arbitrary distinctions among citizens of different counties within Maryland. In discussing legislation which is based on geographical and territorial classifications, we have said:

> "[I]t is equally clear that the power of the Legislature to restrict the application of statutes to localities less in extent than the State, as the exigencies of the several parts of the State may require, cannot be used to deprive the citizens of one part of the State of the rights and privileges which they enjoy in common with the citizens of all other parts of the State, unless there is some difference between the conditions in the territory selected and the conditions in the territory not affected by the statute sufficient to afford some basis, however slight, for classification."

*Maryland Coal and Realty Co. v. Bureau of Mines, supra,* 193 Md. at 642, 69 A.2d at 477.[3] *See also Bruce v. Director, Chesapeake Bay Affairs, supra.*

---

**3.** ·An example of this type of analysis is found in a recent Fourth Circuit case holding that Montgomery County, Maryland violated the Privileges and Immunities Clause when it considered county residence as a factor in determining whether an applicant for a taxicab license was familiar with the county. *O'Reilly v. Board of App. of Montgomery County,* 942 F.2d 281 (4th Cir.1991). Familiarity with the county was one of the primary factors considered in determining which applicants received licenses, and although Montgomery County submitted that mere residency did not conclusively determine familiarity, the facts of the case led the court to the "inescapable conclusion that the Board ultimately rested its determination of which applicants were the most familiar with the geographic area to be served on the applicant's residency." *Id.* at 284. Because the disgruntled applicant who was denied a license was a not merely a resident of another county, but a resident of

## III.

█ The Appellant in this case has set forth a prima facie case of an unreasonable legislative classification in violation of Article 24's guarantee of equal protection under the laws. Notwithstanding the Board of Appeals' finding of a definite need for a tower in the area of Baltimore County which Verzi wishes to serve, Verzi was initially denied an application and denied an assigned tow area for the sole reason that his business is not located in Baltimore County. In applying the rational basis test in this case, we must determine whether the distinction in the Baltimore County ordinance between in-county towers and out-of-county towers is rationally related to a legitimate governmental objective.

At oral argument, counsel for the County stated that the policy underlying the towing legislation is twofold: to protect the public from fraud, deception and abuses and to decrease traffic congestion and delays in the roadways. Clearly, both the prevention of fraud and ensuring a free flow of traffic are legitimate governmental objectives, but we are not convinced that the classification created by § 24–230 furthers those objectives.

The County first asserts that the County Council could have reasoned that requiring licensees to have an established place of business in Baltimore County was rationally related to time and distance factors and, therefore, would serve to more expeditiously eliminate the retarding of traffic, unnecessary street congestion, unnecessary delays and traffic hazards. It is established, however, that Verzi, located two and one-half miles over the county line, is closer to much of the area he intends to serve than are existing in-county towers. Furthermore, it is not difficult to envision numerous other situations in which an out-of-county tower will be substantially closer, both in response time and in actual distance, to an accident

Virginia, interstate relations (and hence, the Privileges and Immunities Clause) were at issue. We believe, however, that the same principles at work in *O'Reilly* are applicable to intercounty relations under Article 24.

scene than are in-county towers. "Time and distance" factors, offered as a justification for the geographic delineation between in-county and out-of-county towers, are spurious.

The County has also suggested that the classification was needed "to subject towing operators to the supervision and administrative control of the County." The towing ordinance, however, provides for a comprehensive regulatory scheme to be enforced by the DPL. Within this scheme, the DPL has the broad power to "revoke or suspend the license of any person licensed to engage in the towing business who shall violate any of the provisions of this article or any rules and regulations promulgated pursuant hereto...." § 24–224. The DPL's regulatory power extends to all license-holders, not merely those which are located within Baltimore County boundaries. The DPL may also initiate criminal proceedings against towers who violate the Article, regardless of the county of violation. The BCPD is likewise empowered to go beyond the County's geographical boundaries in order to investigate crimes committed in Baltimore County. Given the broad regulatory reach of these agencies, we find little merit to the County's claim that it will be unable to effectively regulate out-of-county towers.

Even if we accepted the County's administrative burden argument, we still could not find a rational basis for the distinction between in-county and out-of-county towers. The County freely admits that a motorist's request for a specific out-of-county tower will be honored—indeed, Verzi was summoned into Baltimore County twice in this manner. Moreover, the police are free to call out-of-county towers for vehicles which simply break down; it is only when vehicles are disabled by accident that the police must call the designated in-county tower. The administrative burdens of inspections, investigations, inventories, and record-keeping are just as likely to arise with towers which service break-downs or towers requested by motorists as they are with towers which are called by the police to service accident vehicles, yet the County has found it necessary to place location restrictions only on the latter group. There is simply no rational basis for

the classification of in-county and out-of-county towers created by § 24–230.

We believe that this case is similar to our earlier decision in *Havre de Grace v. Johnson, supra.* In both instances, a local body enacted an ordinance which effectively prohibits nonresidents from conducting a specific business activity within the municipal boundaries. Because we can find no rational basis for the distinction between in-county and out-of-county towers, we are led to the "more reasonable and probable view . . . that [the classification] was intended to confer the monopoly of a profitable business upon residents of the town." *Havre de Grace v. Johnson, supra,* 143 Md. at 608, 123 A. at 67. The County attempts to distinguish *Havre de Grace v. Johnson,* asserting that Verzi is not prohibited from conducting business in Baltimore County; he simply won't be asked by the County to tow disabled vehicles from accident scenes. We believe this argument ignores the nature of the regulatory scheme. Baltimore County has comprehensively regulated the towing business such that it effectively controls which towers will receive business and which will not. By requiring all of its towers to be located within the county boundaries, Baltimore County has, in effect, conferred the monopoly of a profitable business upon certain Baltimore County businesses. The location requirement of § 24–230 of the Baltimore County Code is wholly unrelated to any legitimate government objective, and thus it violates the Equal Protection guarantees of Article 24 of the Maryland Declaration of Rights.[4] This is not to say that Baltimore County may not impose any limitations on its licensees; the County is free, for example, to consider time and distance factors in determining grid assignments for towers (recognizing that time and distance do not correspond strictly with county boundaries), for those factors clearly have a real and substantial relation to maintaining the free flow of traffic. The County is not free, however, to make arbitrary

---

4. Because we so hold, we need not address either the appellant's due process arguments under Article 24 of the Declaration of Rights or his federal constitutional claims.

distinctions based simply on whether a licensee's business premises are located within the county; such distinctions run afoul of the guarantee of equal protection of the laws.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT DECLARING THE LOCATION REQUIREMENT OF SECTION 24-230 OF THE BALTIMORE COUNTY CODE INVALID AND FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY BALTIMORE COUNTY.*